[Cite as *State v. Walker*, 2026-Ohio-2568.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
COLUMBIANA COUNTY

STATE OF OHIO,

Plaintiff-Appellant,

v.

ORLANDO DELVAUGHN WALKER,

Defendant-Appellee.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 25 CO 0040

---

Criminal Appeal from the
Municipal Court of Columbiana County, Ohio
Case No. 2025 CR B 000857

**BEFORE:**
Carol Ann Robb, Mark A. Hanni, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Reversed and Remanded.

---

*Atty. Vito J. Abruzzino,* Columbiana County Prosecuting Attorney, *Atty. Isabella Simon*, Assistant Prosecuting Attorney, for Plaintiff-Appellant and

*Atty. Robert T. McDowall,* for Defendant-Appellee.

Dated: July 1, 2026

**Robb, J.**

{¶1}    Appellant, the State of Ohio, appeals the trial court's dismissal of the pending charge against Appellee, Orlando Delvaughn Walker.  The state argues the trial court erred and abused its discretion by dismissing the charge without making certain findings and without considering less severe sanctions.  For the following reasons, we reverse and remand.

Statement of the Case

{¶2}    Walker was charged by complaint with one count of domestic violence, a first-degree misdemeanor for knowingly causing or attempting to cause physical harm to C.G.  (June 23, 2025 Complaint.)  The affidavit attached to the complaint of Laurice Mans states that on 4:25 a.m. on June 22, 2025, officers responded to a domestic dispute in the City of East Liverpool.  C.G. called police.  Upon the arrival of the police, Walker had left the premises.  Officers spoke with the caller, C.G., who advised them that she and Walker were in a verbal dispute that turned physical.  She is the mother of Walker's child.  The affidavit states C.G. advised officers that "Walker had grabbed her by the hair and struck her in the face."  The affidavit also provides that "Officers could observe an abrasion under [the caller's] left eye."  The affidavit concludes with a statement that officers have reasonable suspicion to believe Walker knowingly caused or attempted to cause harm to a family or household member.  (June 22, 2025 Affidavit of Laurice Mans.)

{¶3}    Walker was arraigned and appeared without counsel.  He was deemed indigent and appointed counsel.  He entered a not guilty plea.  A personal recognizance bond was set at $2,000.  Walker was ordered to have no contact with the victim and directed to possess no weapons or firearms.  (June 30, 2025 Judgment.)

{¶4}    Walker's counsel requested discovery and a bill of particulars in July of 2025.  (July 1, 2025 Request for Discovery.)

{¶5}    Three months later, a pretrial hearing was held October 21, 2025.  At the beginning of the hearing, Walker's attorney indicated that counsel had off-the-record discussions before the hearing commenced.  Defense counsel then orally moved to dismiss the charge against Walker based on the state's failure to preserve body-camera footage from the date of the offense.  (Tr. 2-3).  The court granted Walker's motion to

dismiss explaining Walker had "requested discovery on July 1, 2025. The state did not attempt to ascertain video until 10-21-25. By that time the video had been destroyed." (October 21, 2025 Judgment.)

**{¶6}** Defense counsel stated the following at the pretrial hearing:

Your Honor, before we get into anything else, we just had some discussions off the record about some of the evidence in this case. And it seems like what I'm hearing is that there was, at one point, some bodycam evidence, but that evidence has been expired, I want to say.

We have requested all discoverable materials on July 1st. We find -- we're finding out here that evidence has been destroyed, I believe. And we find that to be problematic.

I would ask that this matter be dismissed. We would like the Court to consider dismissing this case, Your Honor.

(October 21, 2025 Tr. 2-3.)

**{¶7}** The prosecutor responded and indicated the prosecution has never been in possession of the footage. The prosecutor stated he requested it from the "appropriate agency . . . [and] the agency has not maintained those body camera videos in the manner in which they should have. Based on what I understand[,] something was inappropriately marked." The state argued the evidence was not destroyed but it simply had expired. (Tr. 3-4.)

**{¶8}** The trial court expressed its displeasure with the state's failure to timely request the footage. The trial court granted the motion to dismiss during the pretrial hearing and explained:

I will agree with you that the state cannot provide anything that they do not have in their possession. However, I think it was -- it was available to the state. The state did not attempt to even obtain the video until yesterday's date, at which time -- or by that time the evidence has been destroyed. It had expired. The matter will be dismissed.

(Tr. 4.)

**{¶9}** The state raises two assignments of error.

Case No. 25 CO 0040

Assignments of Error

{¶10} We address the state's assigned errors collectively since they are interrelated. They assert:

"[1.] The trial court abused its discretion in dismissing a criminal case without first determining whether the alleged failure to disclose evidence was a willful violation of Crim.R. 16, whether foreknowledge of the undisclosed material would have benefited the accused in preparation of a defense, and whether the accused was prejudiced.

"[2.] The trial court abused its discretion in dismissing a criminal case without first determining the least severe sanction, assuming arguendo that a sanction was even necessary, consistent with the purposes of discovery."

{¶11} The state argues the trial court abused its discretion by dismissing the charge against Walker without addressing the requisite factors and analysis as set forth by the Ohio Supreme Court in *State v. Parson*, 6 Ohio St.3d 442, 445 (1983), governing discovery violations. The state argues that had the court held an evidentiary hearing, the prosecution could have fully developed the record as to the contents of the body camera footage and whether it contained exculpatory evidence.

{¶12} The state also argues the trial court abused its discretion by dismissing the case without considering a lesser sanction. The state does not suggest what lesser sanction was available here. It directs us to the Ohio Supreme Court's decision in *State v. Darmond*, 2013-Ohio-966, ¶ 17-19, in support.

{¶13} The state also asserts a hearing would have allowed it to develop a record as to whether the footage captured interactions with Walker or the victim and any alleged injuries she sustained. The state claims the dismissal of the case without such evidence is an abuse of discretion since a continuance of the case would not have resulted in prejudice.

{¶14} Both of the state's arguments assert the trial court abused its discretion and both contend Crim.R. 16 governs our analysis of its arguments on appeal.

{¶15} Walker, on the other hand, contends the issues on appeal are not subject to an abuse of discretion review and application of Crim.R. 16. Walker asserts the trial court found the state violated his right to due process based on the state's destruction of

irreplaceable evidence.  Thus, Walker contends the issue is not subject to an abuse of discretion standard of review.  Walker's argument is threefold.

{¶16} First, Walker claims the state did not request leave for additional time to develop a record on the issue; did not seek a continuance to secure additional evidence; and did not argue a lack of prejudice to the defendant at the time of the hearing.  Due to the state's failure to bring these issues to the attention of the trial court at the hearing, Walker asserts the state waived the right to raise these arguments now.

{¶17} Second, Walker directs our attention to the decisions in *Bratenahl v. Osredkar*, 2017-Ohio-5811 (8th Dist.), *State v. Powell*, 132 Ohio St.3d 233 (2012), and *California v. Trombetta*, 467 U.S. 479, 486-487 (1984), in support of his contention that due process required the dismissal of the charge based on the destruction of evidence that was "potentially useful."

{¶18} Third, and alternatively, Walker asserts even assuming the abuse of discretion standard applies, the trial court was well within its discretion when it dismissed the charge against him.

{¶19} As for Walker's waiver argument, Crim.R. 52(B) states:  "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."  Because the state did not move for a continuance, seek leave to secure evidence to counter the motion to dismiss the indictment, and did not argue a lack of prejudice to Walker, the state has forfeited all but plain-error review of these issues. To establish plain error, a party must demonstrate the court committed an obvious error that affected the outcome of the proceeding.  *State v. Graham*, 2020-Ohio-6700, ¶ 93, citing *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).  "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."  *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶20} We agree this is not a discovery violation case subject to Crim.R. 16 scrutiny.  Because the evidence in this case was destroyed, the appropriate inquiry is whether the failure to maintain the requested information constitutes a due process violation.  *Bratenahl*, 2017-Ohio-5811, at ¶ 18; *State v. Geeslin*, 2007-Ohio-5239, ¶ 8 (applying the United State Supreme Court decision in *Arizona v. Youngblood* 488 U.S. 51

(1988) and the Due Process Clause of the 14th Amendment when the state fails to preserve evidence); *State v. Powell*, 2012-Ohio-2577, ¶ 72-81.

**{¶21}** We review a trial court's decision dismissing criminal charges based on the state's failure to preserve evidence de novo. *State v. Dotson*, 2018-Ohio-2481, ¶ 84 (7th Dist.) citing *State v. Whalen*, 2008-Ohio-6739, ¶ 7-8 (9th Dist.).

**{¶22}** Relying on U.S. Supreme Court precedent, the Ohio Supreme Court and this court have repeatedly held the destruction of materially exculpatory evidence violates a defendant's due process rights. The evidence must "possess an exculpatory value that was apparent before the evidence was destroyed." *State v. Murphy*, 2022-Ohio-4555, ¶ 34 (7th Dist.), quoting *Trombetta*, 467 U.S. 479, at 488-489.

**{¶23}** However, if the evidence destroyed or not preserved is only potentially useful, such that it could be helpful, a defendant must show bad faith on the part of the state to establish a due process violation. *Geeslin* and *Powell*, citing *Youngblood*. *Accord State v. Nicholson*, 2024-Ohio-604, ¶ 113; *Murphy* at ¶ 30. Bad faith in this context "imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another." (citations omitted). *Powell* at ¶ 81.

**{¶24}** In *State v. Alexander*, 2024-Ohio-2565 (7th Dist.), this court found the state's destruction of a gas grill in an arson investigation and prosecution was potentially useful, not exculpatory. We explained the grill could have been tested and might have led to evidence that may have helped exonerate Alexander. However, at the time of the investigation, the fire investigators did not believe the grill had evidentiary value in light of the witness statements, video evidence, and a confession. There was nothing apparent about the grill making it readily exculpatory. The defendant's claims in this regard were speculative. *Id*. at ¶ 76-90.

**{¶25}** In *State v. Huffman*, 2024-Ohio-889, ¶ 24 (11th Dist.), the Eleventh District Court of Appeals agreed with the trial court and found the destruction of a recorded police interview of the defendant potentially useful, not exculpatory. Thus, a showing of bad faith was required. The *Huffman* court noted both the defendant and the detective

Case No. 25 CO 0040

testified at trial about the contents of the interview, including that the defendant denied the allegations. *Id.*

**{¶26}** When the evidence is potentially useful, the defendant has the burden to establish bad faith by the police or prosecution. *State v. Nicholson*, 2024-Ohio-604, ¶ 116-117*; Powell* at ¶ 81.

**{¶27}** As detailed in the statement of the case, defense counsel in this case moved to dismiss the charge against Walker at the October 21, 2025 pretrial hearing. This was the first pretrial hearing, and trial had not been scheduled. The trial court granted the oral motion to dismiss the charge. The state did not seek a continuance to secure evidence to establish the nature of the destroyed footage and did not request an additional hearing. The state likewise did not assert that Walker would not suffer prejudice as a result of the missing recording.

**{¶28}** The trial court granted the motion to dismiss, emphasizing the court's displeasure with the prosecution's delay in attempting to obtain the recording. The trial court did not, however, find the state acted in bad faith or indicate it addressed bad faith. The court did not inquire on the record into the circumstances surrounding the destruction of the body camera footage. However, the court's statements do suggest it may have been privy to the conversation between counsel prior to the commencement of the hearing, which was not recorded or transcribed.

**{¶29}** Although it was evident the trial court was displeased with the state's delay in seeking the evidence and that the prosecution's delay resulted in the recording not being preserved, it is not ascertainable whether the state's conduct rose to the level of bad faith.

**{¶30}** Walker does not contend the evidence was exculpatory. He asserts the destroyed footage may have been helpful to his defense. We note that the probable cause affidavit filed in his case reflects the officers arrived in response to a call after Walker was no longer present. The caller detailed her version of the events to the police and showed the officers a bruise she sustained as a result. Walker does not indicate or suggest with any specificity what may have been on this recording that could have helped him in his defense. Given that the burden of proof is on the defendant to establish bad

faith, without more, reversal and remand is required to prevent a manifest miscarriage of justice.

## Conclusion

**{¶31}** In light of the foregoing, it was plain error for the trial court to dismiss the charge against Walker when he had the burden to establish the state acted with bad faith when failing to preserve the body camera footage. Thus, we reverse the trial court's judgment dismissing the charge against Walker and remand the case for further proceedings.

Hanni, J., dissents with dissenting opinion.

Dickey, J. concurs.

Hanni, J., dissenting with dissenting opinion.

**{¶32}** With regard and respect to my colleagues, I must dissent from the Majority Opinion. I would affirm the trial court's dismissal of the charges against Appellant.

**{¶33}** I agree with the Majority that we analyze the State's destruction of the evidence under a constitutional due process standard. I also recognize the holdings by the United States and Ohio Supreme Court that a due process violation occurs when the state destroys materially exculpatory evidence or when a defendant provides that the State acted in bad faith in destroying potentially useful evidence. *Arizona v. Youngblood*, 488 U.S. 51 (1988); *California v. Trombetta*, 467 U.S. 479; *State v. Powell*, 2012-Ohio-2577.

**{¶34}** However, without the evidence to review, a defendant cannot determine whether it is materially exculpatory or potentially useful. Justice Stevens noted in *Youngblood* that, "it is not possible to know whether the lost evidence would have revealed any relevant information." *Youngblood* at 61 (Stevens, J. concurrence in judgment only). Justice Stevens also disagreed with the Majority that a due process violation does not occur unless a defendant proves the police failed to preserve potentially useful evidence in bad faith. *Id*. He contended that cases could exist where a defendant is deprived of a fair trial but could not show bad faith on the part of the State in the destruction or loss of evidence. *Id*.

**{¶35}** In addition, as Justice Blackmun stated in his dissent, with whom Justices Brennan and Marshall joined: "The Constitution requires that criminal defendants be provided with a fair trial, not merely a 'good faith' try at a fair trial." (*Id*. at 61, J. Blackmun, dissenting). Justice Blackmun argued that bad faith is not required to prove a due process violation and he reviewed the cases upon which the Majority based its decision in *Youngblood*, including *Brady v. Maryland*, 373 U.S. 83 (1963), *United States v. Agurs*, 427 U.S. 97 (1976), and *Trombetta*. *Id*.

**{¶36}** Justice Blackmun found that none of those cases held a defendant was required to prove bad faith on the part of the State in order to prove a due process violation by destroying, losing, or not turning over evidence. *Youngblood,* 488 U.S. at 64-65 (Blackmun, J., dissenting). He quoted *Trombetta*, where the Court found that the

prosecution's duty to turn over defense evidence was not a constitutional duty, unless not doing so deprived a defendant of a fair trial:

> "Nor do we believe the constitutional obligation is measured by the moral culpability, or the willfulness, of the prosecutor. If evidence highly probative of innocence is in his file, he should be presumed to recognize its significance even if he has actually overlooked it.... If the suppression of evidence results in constitutional error, it is because of the character of the evidence, not the character of the prosecutor."

*Id.*, quoting *Agurs* at 110 (footnotes omitted).  Justice Blackmun noted it made no sense to allow a defendant to be deprived of a fair trial because the State allowed evidence to be destroyed or to deteriorate "beyond the point of usefulness, simply because the police were inept rather than malicious."  *Youngblood* at 66 (Blackmun, J., dissenting).

{¶37}  In addition, a defendant faces an impracticable hurdle in proving the State destroyed or lost evidence in bad faith.  The definition of bad faith is amorphous. *Youngblood* at 66-67 (Blackmun, J., dissenting).  This has led some state courts to reject the bad faith standard by interpreting their state constitutions and applying principles of federalism. Glasner, *Youngblood in Practice:  How the Bad Faith Standard Preserves Wrongful Convictions and Creates Perverse Incentives*, 75 R.U.U.R.L. 1307 (2023).  As Glasner noted, only seven successful cases had succeeded on *Youngblood* claims during the first 19 years after it was decided.  *Id*.

{¶38}  Here, the State failed to respond to Appellant's discovery request for audio and video.  It was not until the day before the pretrial, nearly three months after the discovery request, when the State bothered to request the body cam footage from the police.  Then, the State apparently learned the police department improperly marked the body cam video and it was destroyed.  Appellant had no video to review to determine materiality and he had no information by which to determine bad faith.

{¶39}  Accordingly, I would affirm the trial court's dismissal of the charges against Appellant.

For the reasons stated in the Opinion rendered herein, it is the final judgment and order of this Court that the judgment of the Municipal Court of Columbiana County, Ohio, dismissing the charge against Walker is reversed. We hereby remand this matter to the trial court for further proceedings according to law and consistent with this Court's Opinion. Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**